NOT DESIGNATED FOR PUBLICATION

No. 128,265

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RANDY DEAN BURTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; CLINTON LEE, judge. Submitted without oral argument. Opinion filed July 10, 2026. Affirmed in part and dismissed in part.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Miranda R. Neal*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., COBLE and PICKERING, JJ.

CLINE, J.: Randy Dean Burton challenges the sufficiency of the evidence supporting his convictions and argues that the district court erred in denying him 290 days of jail credit. On review, we find sufficient evidence supports both convictions and therefore affirm them. We dismiss his jail credit challenge as moot because Burton has already served his sentence.

1

Around noon on April 23, 2023, Russell Hopper, owner of the Popcorn Pit Stop, called the Leavenworth police to report that his storage shed behind his business had been opened and a furniture dolly was missing. Hopper reviewed his security cameras and found that on April 21, a storm had broken the lock off his shed, and the doors were blown open. Then around 5 a.m. on April 22, a car drove up and parked for a while, after which a man exited the car, went into the shed and came back with the dolly. The man then put the dolly in the back of his car and drove away. Hopper testified that the car was some sort of SUV with a "very odd rack on the top that looked like it was man-made."

Officer Brittany Swanbeck responded to the call. When she arrived, Hopper showed her the security footage. Swanbeck recognized the car—based on the large black roof rack with distinctive writing on it—as being a vehicle the police had towed from an alley that same morning. Burton was not the registered owner of the car; however, during the customary inventory of towed vehicles, Officer Paul Lednicky found mail addressed to Burton as well as his driver's license.

Officer Lednicky then returned to the home near where the vehicle was towed. While approaching the home, Lednicky observed the dolly in plain view. At first, no one answered the door. So Lednicky called one of the known residents, and the resident eventually came outside to talk to him. Afterward, the resident's boyfriend, Burton, also came outside to speak to Lednicky. Lednicky asked Burton whether he knew why he was there, and Burton confirmed that he knew it was about the dolly he had taken from the shed.

Burton testified that he had been parked behind the Popcorn Pit Stop because he was looking to work with a construction crew demolishing property nearby. While waiting in his car, Burton claimed he noticed the open shed, trash strewn across the

ground, and an overturned trash bin nearby. Assuming that the dolly was being thrown out, Burton picked up the dolly and placed it in his car.

Hopper clarified in his testimony that what Burton called the "trash can" was actually a two-foot-tall plastic wheelbarrow that had blown over in the storm and that no trash was ever stored in the shed. In fact, the trash can for his business was "about 30 foot north and another 40 foot west of [the shed]," so "[a]bout 70 [feet] away" in total. Also, during her investigation, Officer Swanbeck observed various items inside the shed but found no evidence of any trash either in or around the shed.

The jury convicted Burton on both counts. The district court sentenced Burton to 27 months in prison for the primary charge of burglary and 12 months in jail for the theft, to be served concurrently. The district court awarded Burton 100 days of jail credit for the time served before he bonded out, but it denied the award of 290 days spent in jail in Iowa for other charges.

REVIEW OF BURTON'S APPELLATE CHALLENGES

*Was there sufficient evidence to convict Burton of burglary and theft?*

Burton argues that even when viewed in a light most favorable to the State, no rational juror would have found that he entered the shed with the intent to take the dolly and permanently deprive Hopper of it. The State counters that Burton wants this court to reevaluate the evidence and credibility of his theory, something we cannot do. And based on the circumstantial evidence provided, the State argues that a reasonable jury could find that Burton intended to steal from the shed.

3

*Standard of Review*

In a criminal case,

> "[w]hen a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

Furthermore, "[i]t is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the factfinder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

*There is sufficient evidence to support the convictions.*

The State charged Burton with one count of burglary in violation of K.S.A. 21-5807(a)(2)(A) and one count of theft in violation of K.S.A. 21-5801(a)(2), both of which require intent—intent to commit theft and intent to deprive the owner of the use or benefit of the property.

K.S.A. 2022 Supp. 21-5807 states, in relevant part: "(a) Burglary is, without authority, entering into or remaining within any: . . . (2)(A) building, manufactured home,

4

mobile home, tent or other structure which is not a dwelling, with intent to commit a . . . theft."

K.S.A. 2022 Supp. 21-5801 states, in relevant part: "(a) Theft is any of the following acts done with intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services: . . . (2) obtaining control over property or services, by deception."

Burton argues there was insufficient evidence that he entered the shed with the intent to steal or to deprive the owner of the dolly's use and benefit because he thought that it was trash that had been abandoned. Burton denied entering Hopper's shed and taking the dolly, asserting that the dolly was out sitting in plain view—unlike business trash which is ordinarily stored in a dumpster kept in an enclosure, shielded from the public.

The State presented photos of the stolen dolly, photos of Burton's car and its contents, photos of the shed after the dolly was taken, body camera footage from the initial interaction with Hopper, body camera footage from Burton's arrest, security footage of him taking the dolly from the Popcorn Pit Stop's shed, as well as testimony from the two officers and Hopper himself. The exhibits were not included for review in the record on appeal, but this court does not reweigh the credibility of the evidence or witness testimony.

The jury heard evidence that Burton immediately said to police that he knew why the officers had showed up at his residence—because of the dolly he had taken from the shed—before correcting himself and saying he took it from the trash. When asked whether he intended to keep the dolly, Burton responded:

5

"A.  I didn't—no, I didn't intend to deprive anybody of it if they wanted it. I didn't know.

"Q.  Did you intend to keep it?

"A.  I hadn't got that far what I was going to do with it.

"Q.  Were you taking it back to the Popcorn Pit Stop the next day?

"A.  I could have.

"Q.  But did you?

"A.  If I would have seen a car sitting there, I would have, yes.

"Q.  Why would you have suddenly brought it back if you thought it was trash?

"A.  Because I was going to be working right next door. If I seen [*sic*] a car there, I would have been, hey, man, there was all this stuff laying out there and I picked this up. Do you want the rolling dumpster, too? I probably would have asked for that. Since it is—he is throwing stuff away.

"Q.  But you didn't take the rolling can that you saw?

"A.  No.

"Q.  But you took the dolly out of the shed?

"A.  I did.

"Q.  And you didn't have permission?

"A.  I didn't burglarize the shed.

"Q.  But you did not have permission to take the dolly?

"A.  No. I thought it was trash. It was on the alleyway."

One of the security footage clips also showed that Burton had his hood up at night while taking the dolly, and when leaving, he "shuts his lights off as he starts to head down the alley. He goes full blackout as he is driving away from the scene at night."

Our Supreme Court has long held that circumstantial evidence

"is evidence that tends to prove a fact in issue by proving other events or circumstances which, according to the common experience of mankind, are usually or always attended by the fact in issue, and therefore affords a basis for a reasonable inference by the jury . . . of the fact in issue." *Casey v. Phillips Pipeline Co.*, 199 Kan. 538, 550, 431 P.2d 518 (1967).

It has also held: "Intent, a state of mind existing at the time an offense is committed, does not need to be and rarely can be directly proven" through direct evidence. *State v. Griffin*, 279 Kan. 634, 638, 112 P.3d 862 (2005).

Here, there was sufficient evidence for a reasonable jury to conclude that Burton entered the shed intending to steal. While there may not be direct evidence of such, intent is rarely directly proven; thus circumstantial evidence is key here. The jury was properly informed that it had to determine Burton's intent and that he could not be guilty if it believed he genuinely thought it was trash that he was taking. The jury weighed the evidence and ultimately rejected Burton's theory that the dolly appeared to be abandoned property. This court does not reweigh the evidence or credibility of witnesses. On this record, we find there was sufficient evidence to support his convictions.

*Burton's jail credit challenge is moot.*

Burton also argues that he was entitled to 290 days of jail credit earned in Iowa while awaiting sentencing in this case. But on November 17, 2025, Burton was released from custody. Based on these facts, Burton's jail credit challenge has become moot. Burton has served his sentence, and the prison term cannot now be shortened to account for a miscalculation of his jail time credit (even if there were credits to be allotted). See *State v. Roat*, 311 Kan. 581, 596, 466 P.3d 439 (2020) (An appeal of a person's sentence is usually moot after the person has completed the sentence.).

Although Burton may face additional time in Iowa, his sentences here were ordered to run consecutive with any sentences from his Iowa charges, and he already received credit in those cases. Jail credit "cannot be 'banked' to count against a violation" separate from this case or for some future crime. *State v. McLoud*, No. 121,367, 2020 WL 6533113, at *1 (Kan. App. 2020) (unpublished opinion).

Because Burton is no longer in custody for his Leavenworth County burglary and theft charges, any decision about how much jail credit he had for that sentence could not affect his completed sentence. See *McLoud*, 2020 WL 6533113, at *1; *State v. Reider*, No. 120,534, 2020 WL 967859, at *1 (Kan. App. 2020) (unpublished opinion); *State v. Ramsey*, No. 111,163, 2015 WL 6444242, at *1 (Kan. App. 2015) (unpublished opinion). We therefore dismiss his jail credit challenge as moot.

Affirmed in part and dismissed in part.